IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Matthew S. Harrington, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 22 C 50007 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Von Baron Legal Team, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

It is this Court's Report and Recommendation to the District Court that Plaintiffs' Amended Motion for Default Judgment Against Von Baron Legal Team d/b/a The Retention Group [18], be granted and damages awarded as set forth in the Court's statement. Any objection to the Court's Report and Recommendation is due by September 6, 2022.

**STATEMENT**

On January 21, 2022, Plaintiffs Matthew S. Harrington and Stephanie L. Harrington ("Plaintiffs") brought a first amended complaint ("complaint") against Defendant Von Baron Legal Team d/b/a The Retention Group ("Defendant"). Plaintiffs alleged damages against Defendant pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") under 815 ILCS 505/1, et seq., as well as claims for Fraudulent Misrepresentation, Negligence, Breach of Contract, and Breach of Fiduciary Duty. *See* [11]. According to the complaint, in late 2020, Plaintiffs alleged they engaged Defendant's services under the representation that Defendant would work with Plaintiffs' mortgage company to reduce their mortgage interest rate from 9.5% to 5.0%. Under the terms of the contract, Plaintiffs paid Defendant $3,890.94 for Defendant's services and ceased making mortgage payments for approximately seven months as directed by Defendant. *Id.* In October of 2021, Defendant informed Plaintiffs it was unable to reduce Plaintiffs' interest rate. Defendant did not follow-up with Plaintiffs nor did Defendant refund or compensate Plaintiffs for its charged fee or for any fees or costs Plaintiffs incurred in their late payments to their mortgage company. *Id.*

On March 24, 2022, Plaintiffs obtained an order of default against Defendant [16]. On April 18, 2022, Plaintiffs filed an amended motion for a default judgment [18]. A hearing was held on May 26, 2022, on Plaintiffs' motion for default judgment. Defendant did not appear at the hearing and has not sought to set aside the order of default. According to the proof of service, Plaintiffs served the Clerk's entry of default, amended motion for default judgment, the Court's minute entry directing proper service, and the Court's minute entry setting the hearing on Plaintiffs' motion, on Defendant's registered agent and representative by United States Postal

Service Priority Mail, return receipt [24], [25], [26]. With the motion, the Plaintiffs have submitted an affidavit establishing attorneys' fees and costs to recover amounts owed. According to counsel's motion, affidavit and itemization, attorney Nathan Volheim spent 16.9 hours at the hourly rate of $375, attorney Eric Coleman spent 3.0 hours at the hourly rate of $375, and two other employees at Plaintiffs' firm spent 3.4 hours at the hourly rate of $125, for a total of $7,887.50, plus $539.90 in costs [31]. The Court has reviewed counsel's billing records and determines that the hours spent were reasonable, as are counsels' billing rate and costs.

In addition to attorneys' fees and costs, Plaintiffs seek damages under 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1000 and at least $20,000 in out-of-pocket expenses stemming from payments made to Defendant for deficient professional services. According to the complaint, Plaintiffs paid Defendant $3,890.94 for Defendant's services. Plaintiffs also seek emotional distress and mental anguish damages as additional actual damages. "Although actual pecuniary (economic) damages are an element of an ICFA claim, a plaintiff may also recover damages for emotional distress after first establishing the element of economic damages." *Ewing v. 1645 West Farragut, LLC*, No. 16-cv-9930, 2022 WL 1803542, at *2 (N.D. Ill. June 2, 2022) (citations omitted).

The Court held an evidentiary hearing on June 29, 2022. At that hearing, Plaintiffs testified to their economic and non-economic damages. As to economic damages, Plaintiffs testified to the $3,890.94 fee they paid for Defendant's services. They also testified to the sums of money they were forced to borrow from family members to catch up with their mortgage payments that went unpaid for approximately seven months at the direction of Defendant. As to that sum – which Plaintiffs testified was approximately $13,000 – Plaintiffs' counsel's position statement concedes that most of this money went toward the mortgage payments that would have otherwise been paid. The statement does indicate Plaintiffs were forced to pay "late fees and other fees" that were the direct cause of Defendant's conduct; however, nowhere in the filing nor at the evidentiary hearing did Plaintiffs advise the Court how much of this sum went toward these fees. As to economic damages, the Court recommends an award to Plaintiffs of $4,800. This sum represents the fees paid to Defendant for its services as well as an approximation of "late fees and other fees" (at $200 per month for seven months).

As to non-economic damages, Plaintiffs seek $50,000 each. As noted by Plaintiffs in their position statement, "bare allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Denius v. Dunlap*, 330 F.3d 919, 930-31 (7th Cir. 2003) (citations omitted). Here, Plaintiff Stephanie Harrington testified that the fraudulent actions of Defendant caused arguments with her husband, stress with her children – especially her son who started questioning what was wrong – panic attacks, lack of sleep, stress eating, diminished marital relations with her husband, and a scaled-back Christmas holiday for her children. She testified she maintained her job as an office coordinator for a physical therapy office but tried to work additional hours to generate more money for the family. She did not seek any counseling but spoke with her father about the situation and the stress it was causing her and her family. She testified she and her husband borrowed money from both of their parents to catch up with their mortgage payments. Plaintiff Matthew Harrington testified that "life was in a shambles"

during this time. He reiterated he and his wife fought a great deal, their son struggled with the stress, he had sleepless nights, and it was, overall, a very terrible time. He was able to maintain his employment as an assistant plant manager for Menards. He testified he was grateful for the loans his wife's parents had given them, and from the money his parents were able to loan them. When asked by the Court about details regarding the stress this incident put him and his wife through, he responded these are "things I don't want to get into."

The Court does not make light of the stress Plaintiffs suffered due to Defendant's fraudulent actions, and having heard and seen their testimony, understands the difficulties their family experienced. Fortunately for them, they were able to rely on the support of their family to make delinquent mortgage payments. And luckily, unlike Plaintiff in *Ewing*, Plaintiffs here did not "turn over a large part of their life savings" to a fraudulent defendant. *Ewing*, 2022 WL 1803542, at *2. While they may have "risked" foreclosure or bankruptcy, they did not suffer from either. Plaintiffs' position statement does little more to support Plaintiffs' emotional damages than to repeat they suffered "significant" emotional distress and mental anguish. [30], at 2-4. Examining the financial hardship and loss and comparing it to the emotional distress testified to by both Plaintiffs, the Court finds an award of $50,000 per Plaintiff to be excessive and unreasonable. The Court will, however, recommend an award of emotional damages in the amount of $2,500 per Plaintiff.

Accordingly, it is this Court's Report and Recommendation that the District Court grant the Plaintiffs' motion for a default judgment [18] and enter judgment in the amount of $18,227.40 in favor of the Plaintiffs. This amount represents the sum total of attorneys' fees, costs, economic and non-economic damages. Any objection is due by September 6, 2022. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Date: 08/22/2022                                ENTER:

*Margaret J. Schneider*
United States Magistrate Judge